IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

Nefertiti Gilbert et al.,

    Plaintiffs,

v.

Harris County, Texas et al.,

    Defendants.

Case 1:25-cv-00421-DDD-JPM

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

TABLE OF EXHIBITS .............................................................................................................. iii

BACKGROUND ..........................................................................................................................1

LEGAL STANDARD ..................................................................................................................3

ARGUMENT ................................................................................................................................4

    A. Plaintiffs' Monell discovery appropriately covers LaSalle's wide practices, not just its practices at the Olla facility..........................................................................................4

    B. LaSalle's refusal to respond to discovery regarding corporate affiliates .......................7

    C. LaSalle's refusal to produce its written policies .............................................................9

    D. LaSalle's refusal to produce a roster of people detained at the Olla facility during Mr. Anderson's incarceration there ................................................................................11

CONCLUSION ..........................................................................................................................13

# TABLE OF AUTHORITIES

*Mancuso v. Starr Surplus Lines Ins. Co.*, No. 2:21-CV-03947, 2024 WL 1500208 (W.D. La. Apr. 5, 2024) ................................................................................................................................3

*Pulido v. Allstate Vehicle & Prop. Ins. Co.*, No. 1:23-cv-309, 2024 WL 1468922 (E.D. Tex. Apr. 3, 2024) ................................................................................................................................4

*Herr v. Armor Corr. Health Servs.*, Inc., No. 6:19-cv-394, 2019 WL 12021672 (M.D. Fla. Sept. 9, 2019) ................................................................................................................................5

*Shadrick v. Hopkins County*, 805 F.3d 724, 744 (6th Cir. 2015) ......................................................5

*Shields v. Prince George's Cnty.*, No. 15-cv-1736, 2016 WL 4581327 (D. Md. Sept. 1, 2016)......5

*Piner v. Thompson*, No. 3:10-cv-66, 2013 WL 1310555 (S.D. Miss. Mar. 26, 2013) ...................12

*Smith v. Shartle*, No. 18-cv-00323, 2020 WL 6741539 (D. Ariz. Nov. 17, 2020) ........................12

*Jones v. Cnty. of San Bernardino*, No. 15-cv-80, 2016 WL 4425711 (C.D. Cal. Aug. 17, 2016)..12

*Humphrey v. LeBlanc*, No. 20-cv-233, 2021 WL 3560842 (M.D. La. Aug. 11, 2021) ........12

# TABLE OF EXHIBITS

**Exhibit 1.**  Plaintiff's Rule 33 & Rule 34 discovery to LaSalle (Aug. 18, 2025).

**Exhibit 2.**  Discovery responses by LaSalle Correctional Center, LLC (Dec. 10, 2025).

**Exhibit 3.**  Discovery responses by LaSalle Corrections, LLC (Dec. 18, 2025).

**Exhibit 4.**  "Supplemental" discovery responses by LaSalle Correctional Center, LLC and LaSalle Management Company, LLC (Dec. 18, 2025).

**Exhibit 5.**  Second "supplemental" responses by LaSalle Correctional Center, LLC and LaSalle Management Company, LLC (Feb. 6, 2026).

**Exhibit 6.**  Plaintiffs' Rule 37 letter (Dec. 30, 2025).

**Exhibit 7.**  LaSalle's Rule 37 letter (Jan. 16, 2026).

**Exhibit 8.**  Proposed order.

Pursuant to Federal Rule of Civil Procedure 37(a)(3) Plaintiffs bring this motion and incorporated memorandum in support to compel defendants LaSalle Correctional Center, L.L.C., LaSalle Corrections, L.L.C., and LaSalle Management Company, L.L.C. (collectively "LaSalle") to answer Rule 33 interrogatories and produce documents in response Rule 34 document requests that Plaintiffs have propounded on LaSalle.

Pursuant to Local Rule 7.3 a proposed order is attached to this motion as **Exhibit 8**.

## BACKGROUND

This case arises from the death of a young man named Jaleen Anderson while he was housed in a private jail that is owned and operated by LaSalle. Mr. Anderson, who was from Houston, Texas, was arrested on drug possession charges and jailed by the Harris County Sheriff. Harris County outsources the holding of detainees to LaSalle, and on March 22, 2024, Mr. Anderson was sent from Houston to a LaSalle facility in Olla, Louisiana. On April 2 and 3, 2024, Mr. Anderson experienced a series of increasingly severe seizures. Even as his symptoms became increasingly dire, however, LaSalle refused to send him out for medical care. At one point a LaSalle nurse explained to a guard, "We don't send people to the hospital for seizures." Mr. Anderson would be dead a few hours later, on April 3.

Plaintiffs brought this suit against a number of individuals who were involved in Mr. Anderson's medical care, as wells as multiple different LaSalle

1

entities, including LaSalle Correctional Center, L.L.C., LaSalle Corrections, L.L.C., and LaSalle Management Company, L.L.C. (collectively "LaSalle").[1]

This motion concerns discovery—Rule 33 interrogatories and Rule 34 requests to produce—that Plaintiffs have served on LaSalle to prove their claims. Plaintiffs' discovery requests are appended to this motion as **Exhibit 1**.[2] LaSalle has provided multiple sets of responses, *see* **Exhibits 2-5**, and the parties have engaged in multiple Rule 37 videoconferences (as well as written correspondence, *see* **Exhibits 6-7**) regarding Plaintiff's discovery. While some requests are still under discussion, the parties have come to issue regarding several items. In this motion, Plaintiffs ask the Court to order LaSalle to respond to the following categories of discovery:

**Scope of *Monell* discovery**. Pursuant to *Monell*, Plaintiffs allege that LaSalle has company-wide *de facto* policy of providing inadequate medical care that resulted in Mr. Anderson's death. To prove those allegations Plaintiffs have served company-wide discovery on LaSalle, which operates multiple facilities. LaSalle, however, has objected to the scope of that discovery and will respond only regarding

---

[1] Plaintiffs also brought this case against the owners of LaSalle in their official capacities, as well as multiple LaSalle employees in their official capacities. "[A]n official-capacity suit against employees of an agency or company is in essence a suit against the company of which they are agents." *Kennemer v. Parker Cnty., Texas*, No. 4:20-cv-056-P, 2021 WL 1192249, at *7 (N.D. Tex. Mar. 30, 2021) (citation omitted).

[2] While it is not relevant to this motion, LaSalle's discovery responses were considerably delayed. Plaintiffs have been prejudiced by this delay and may seek relief in the future.

2

the Olla facility where Mr. Anderson died. The Court's intervention is required for Plaintiffs to gather evidence supporting their claims.

**Corporate structure**. Plaintiffs have served LaSalle with interrogatories and requests to produce that seek to understand LaSalle's corporate structure as related to Plaintiffs' allegations, particularly the specific LaSalle entities that have operation, ownership, and control the various LaSalle prisons described in the complaint. LaSalle has repeatedly evaded this discovery, and Plaintiffs have concluded that the Court's intervention is required to secure appropriate responses.

**LaSalle's written policies**. Plaintiffs have asked LaSalle to produce its written policies. LaSalle has refused, and has instead offered to produce only those policies that it unilaterally deems relevant, along with a policy "index" that it says Plaintiffs can use to try and identify other relevant policies on their own. Plaintiffs ask the Court to compel LaSalle to produce its written policies as requested.

**Roster of prisoners at Olla**. Plaintiffs have asked LaSalle to produce a roster of prisoners at the Olla facility during the short time that Mr. Anderson was incarcerated there, in order to identify potential witnesses to what transpired. LaSalle has refused to do so.

### LEGAL STANDARD

"Rule 26 sets a broad scope for discovery." *Mancuso v. Starr Surplus Lines Ins. Co.*, No. 2:21-CV-03947, 2024 WL 1500208, at *1 (W.D. La. Apr. 5, 2024). The rule provides that "[p]arties may obtain discovery regarding any nonprivileged

3

matter that is relevant to any party's claim or defense," so long as the discovery is otherwise proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

## ARGUMENT

A. **Plaintiffs' Monell discovery appropriately covers LaSalle's company-wide practices, not just its practices at the Olla facility.**

Plaintiffs allege that LaSalle's *de facto* policies, which are observed company-wide, of providing inadequate medical care to its detainees. Plaintiff has served *Monell* discovery that seeks to gather evidence to support those claims. LaSalle, however, has insisted that it will respond only to discovery about the Olla facility where Mr. Andreson was housed, arguing that its company-wide practices are outside the scope of Plaintiff's claims.

LaSalle's position reflects a fundamental misunderstanding of both the scope of discovery under Rule 26(b)(1), and under *Monell* in particular. Plaintiffs' complaint provides the appropriate starting point for the Court's analysis, since "the allegations in a plaintiff's complaint inform the scope of discovery." *Pulido v. Allstate Vehicle & Prop. Ins. Co.*, No. 1:23-cv-309, 2024 WL 1468922, at *2 (E.D. Tex. Apr. 3, 2024) (citing Fed. R. Civ. P. 26(b)(1)). Plaintiffs' complaint alleges that LaSalle is a large private prison corporation that operates at least 18 jails in Louisiana, Texas, Mississippi, and Georgia. *See* ECF 1 ¶ 14. The complaint alleges that Mr. Anderson's death was the result of LaSalle's *de facto* policies, which it implements company-wide. *Id.* ¶¶ 130-135. In support of this allegation, Plaintiffs have identified other cases of catastrophic medical failures, lawsuits, and reports of deficient medical care, occurring at LaSalle facilities *besides* Olla. *Id.* ¶¶ 139 (a)-(*l*).

4

Plaintiffs allege these patterns persist across the company because LaSalle, as a matter of *de facto* policy, turns a blind eye to them, thereby enabling them. *Id.* ¶¶ 140-147. Essentially, Plaintiffs allege that LaSalle's *de facto* policies, implemented company-wide, were the driving force behind Mr. Anderson's inadequate medical care. *See id.* ¶¶ 134, 164.

Courts across the country have repeatedly held that under *Monell*, when a private prison vendor operates multiple facilities, its practices across those different facilities are relevant evidence for proving the vendor's *de facto* policies were the driving force behind a particular prisoner's inadequate medical care. *See, e.g.*, *Herr v. Armor Corr. Health Servs., Inc.*, No. 6:19-cv-394, 2019 WL 12021672, at *5 (M.D. Fla. Sept. 9, 2019) (*Monell* decision holding that incidents of inadequate care by private jail healthcare vendor "around the country" supported a claim that the vendor "has a policy or custom of repeated delayed or denied medical care that directly resulted in the constitutional violation and Mr. Herr's death."); *Shadrick v. Hopkins County*, 805 F.3d 724, 744 (6th Cir. 2015) (holding that, with respect to a *Monell* plaintiff's "argument that a pattern of tortious or unconstitutional conduct . . . existed, evidence about similar incidents of inmate deaths in jail facilities served by [private vendor] may be relevant to whether [the vendor] acted with deliberate indifference to the medical needs of inmates with whom its nurses came into contact at [the particular jail where plaintiff's decedent was housed].").

The district court's decision in *Shields v. Prince George's County*, No. 15-cv-1736, 2016 WL 4581327 (D. Md. Sept. 1, 2016), is particularly instructive. In

5

*Shields*, a *Monell* plaintiff suing prison vendor Corizon made "allegations related to previous lawsuits and complaints regarding Corizon employees in 14 different states." *Id.* at *8. Corizon claimed such incidents were irrelevant as "none of these allegations relate to the facility or even the state at issue in this case," *id.* at *9, but the court rejected that argument. It reasoned, "Corizon is a company that provides healthcare services to state and county correctional facilities and jails nationwide. Thus, its activities in a variety of states can be, and in this case are, relevant to the issue of custom and policy here." *Id.* (quotations omitted).[3]

    The very same can be said of LaSalle: it is a corporation that takes custody of people and provides them with healthcare across multiple facilities.  Plaintiffs have charged that LaSalle's company-wide customs and practices result in inadequate medical care and inmate deaths in multiple LaSalle facilities—not just at Olla. That makes LaSalle's company-wide practices, at the various facilities, relevant to Plaintiffs' *Monell* claims and within the scope of appropriate discovery.  LaSalle should be compelled to respond to Plaintiffs' discovery.

    LaSalle's foregoing scope objection and its refusal to respond to discovery outside Olla infects the bulk of Plaintiffs' *Monell* discovery in this case, including numerous interrogatories and document requests. Over and over again, a discovery request would ask for company-wide information but LaSalle would confine its response to the Olla facility.  Rather than list each affected request here, Plaintiffs

---

[3] In their Rule 37 correspondence Plaintiffs pointed out each of these authorities—including *Shadrick*, *Herr*, and *Shields*—to LaSalle.  See **Ex. 6** at 2. LaSalle has never explained why any of these authorities were wrong or inapplicable to this case.

6

respectfully submit it is more efficient to refer the Court to review their December 30, 2025 Rule 37 discovery enforcement letter, which lists the affected discovery by category. *See* **Exhibit 6**. Referring to that letter, Categories 2, 3, 4, 5, 6, and 10 are directly implicated by the scope objections. These requests concern things like identification of LaSalle policymakers (**Ex. 6** at 5, Cat. 2), identification of deaths and critical incident tracking and reporting at LaSalle facilities (**Ex. 6** at 5-7, Cats. 3-4), production grievances regarding medical care (**Ex. 6** at 7-8, Cat. 5), outside audits (**Ex. 6** at 8, Cat. 6), and communication with clients about medical care and related subjects (**Ex. 6** at 10, Cat. 10).

The Court should compel LaSalle to respond to this discovery as requested. Plaintiffs have alleged that LaSalle's company-wide practices led to Mr. Anderson's inadequate medical care. LaSalle should not be permitted to unilaterally confine Plaintiffs' *Monell* discovery in this case to its Olla facility.

### B. LaSalle's refusal to respond to discovery regarding corporate affiliates.

"LaSalle" is not a single company but rather is a series of associated corporate entities owned by William and Clay McConnell,[4] who are also defendants in this case. As relevant here, Plaintiffs served three discovery requests to understand this corporate structure:

---

[4] One publication referred to LaSalle's corporate structure as "a web of LLCs." *Prison Legal News*, Record-Setting $7 Million Settlement Caps LaSalle's Legacy at Texarkana Jail (Jan. 1, 2024). Available at https://www.prisonlegalnews.org/news/2024/jan/1/record-setting-7-million-settlement-caps-lasalles-legacy-texarkana-jail/

7

> **Interrogatory No. 2.** Please identify each and every affiliate, subsidiary, parent company, and owner of LaSalle. For each affiliate, subsidiary, parent company, and owner identified, provide a detailed description of nature of the business and ownership, as well as the services provided by or to the affiliate, subsidiary, or parent company, how these services relate to or support the operations of LaSalle correctional facilities.
>
> **Interrogatory No. 3.** Please identify every correctional facility owned, operated, managed, staffed, or controlled by LaSalle between January 1, 2015 and the present. . . . .
>
> **Request No. 46.** Any and all documents or materials reflecting who owns, operates, manages, and controls [list of 19 LaSalle facilities] and/or any other facility identified in your response to Interrogatory No. 3.

**Ex. 1**. LaSalle has refused to respond substantively to this discovery. First it objected outright. *See* **Ex. 2, 3**. After enforcement, *see* **Ex. 6** at 4, it has identified the *facilities* by name, *see* **Ex. 5**, essentially re-stating Plaintiff's interrogatory, but it has refused to identify any responsive *entities* that the interrogatories seek. Instead, LaSalle responded via a January 16, 2026 letter as follows:

> *Interrogatory 2 and 3*: The facility known as LaSalle Correctional Center, located at 15976 Highway 165, Olla, LA 71465, is owned by LaSalle Correctional Center, L.L.C., which employs the majority of the employees working at the facility. LaSalle Management Company, L.L.C. provides back-office support to LaSalle Correctional Center such as handling payroll and invoice processing for the facility. No other business entity is involved in the management of LaSalle Correctional Center.
>
> LaSalle Management Company, L.L.C. provides the same type of back-office support for other LaSalle-branded facilities. Each of the eighteen LaSalle-branded facilities is operated by a separate limited liability company.

**Ex. 7** at 2. LaSalle thus refused to identify any of the entities that operate the facilities.[5] And it has never identified any persons or entities controlling those

---

[5] The response identifies only defendant LaSalle Management Company LLC, and in doing so is careful to describe it as providing only "back office" services that do not appear to include operation, and particularly medical care, at any of the facilities.

8

facility-operating entities—or any other relevant affiliates of the current LaSalle defendants.

Then, having refused to identify any responsive entities, in response to RFP 46, LaSalle refused to produce any documents that might identify the entities either, telling Plaintiffs instead to go find the documents on their own:

> *Request for Production No. 46*: Documents reflecting the ownership of the LaSalle-branded facilities are equally available to Plaintiffs in the form of public records. *See e.g.,* *https://coraweb.sos.la.gov/CommercialSearch/CommercialSearchDetails.aspx?CharterID=502574_46F1D8FA9A*.

*Id.* at 2. The documents are not "equally available," of course, because LaSalle refused to identify the entities responsive to Interrogatory 3.

This is evasion. Discovery that seeks to identify a defendant's corporate structure and relevant corporate affiliates is a routine part of discovery, and it is entirely appropriate in this case where LaSalle may be comprised of various corporate entities with overlapping ownership and operation of the relevant facilities at issue in this case. LaSalle should be ordered to respond fulsomely to these basic discovery requests.

C. **LaSalle's refusal to produce its written policies.**

In multiple Rule 34 requests, Plaintiffs asked LaSalle to produce written policies relating to healthcare at LaSalle facilities generally (**Ex. 1**, RFPs 41, 42, 51), and a broader set of policies relating to the Olla facility in particular, including healthcare but also operations (**Ex. 1**, RFPs 61, 62, 63). LaSalle has produced some healthcare policies, but has objected to a wider production. Instead it has offered to provide an index so that Plaintiffs can guess at other relevant policies. LaSalle's

9

counsel took the position that producing broader policies would be unduly burdensome, but when asked by Plaintiffs' counsel whether the policies were stored together, which would make them relatively easy to produce, LaSalle counsel did not know. Nevertheless in LaSalle's follow-up letter only an index has been offered.

 Production of the full policies is proportional and appropriate. Plaintiffs have been careful to request operational policies only for the Olla facility, since those policies may shed light on why certain things happened or certain steps were taken by staff during Mr. Anderson's incarceration there. In general, it is often not possible to determine the relevance of a particular written policy until later in the case. Any number of policies—guard break times, cell check protocols, to shift briefing rules, sally-port procedures—may turn out to be of central relevance in a medical case, but only when considered in the context of other events or evidence. Production of full policies helps ensure that the maximum amount of such information is available.

 Production of written policies usually imposes a minimal burden, because policies are stored and organized for easy access and reference. That appears to be the case here: LaSalle's offer to provide Plaintiffs with a policy index indicates that the responsive policies are so organized and easy to produce. Indeed it would likely be more burdensome to pull out and produce a handful of the policies instead of the entire volume. Plaintiffs, furthermore, are willing to enter into a protective order regarding such materials, and indeed the parties are negotiating a protective order now. Production of the full policies should be ordered.

10

**D.      LaSalle's refusal to produce a roster of people detained at the Olla facility during Mr. Anderson's incarceration there.**

In order to identify witnesses who may have seen what happened to Mr. Anderson, Plaintiffs have asked LaSalle to produce an inmate roster for the short period (March 22 to April 3, 2024, *see* ECF 1 ¶ 4) that he was jailed at the Olla facility. The request is phrased as follows:

> **Request No. 32**. Any and all documents or materials in your possession sufficient to show all detainees at Olla LCC during the Subject Confinement including the detainee's name, jail number, housing location within the Olla LCC, law enforcement agency on whose behalf the person was held at Olla LCC, home address, and phone number.

LaSalle has refused to produce responsive documents, claiming overbreadth. That objection does not withstand scrutiny. The request simply is not overbroad. Plaintiffs have limited the request only to the short period that Mr. Anderson was housed at the Olla facility. Meanwhile, the request specifically asks LaSalle to include the housing number of each detainee, which will help Plaintiffs identify and focus those detainees who may have witnessed Mr. Anderson's medical emergency. That is important, because it appears Mr. Anderson was moved around the facility multiple times as his condition progressed. Having a full inmate roster, which will be a simple matter for LaSalle to produce, will help identify detainees who may have seen Mr. Anderson as those moves occurred. Detainees also ambulate around facilities, and people who many not have been housed near Mr. Anderson may nevertheless have witnessed relevant events. The list of detainees that Plaintiffs seek will help them identify such witnesses as Plaintiffs' investigation continues.

11

On the other side of the scale, the information Plaintiffs seek to gather is very likely to lead to the discovery of important evidence in this case. Aside from detainees at the facility, everyone who witnessed Mr. Anderson's medical crisis and death is a LaSalle employee. Those witnesses can be expected to testify under pressure from their employer and their colleagues to give an account that downplays any misconduct that might have occurred. It is critically important to give Plaintiffs the ability to locate witnesses who do not suffer from those same pressures in gathering evidence about what happened in this case.

Inmate rosters, it should be noted, are a routine feature of correctional litigation discovery. *See, e.g.*, *Piner v. Thompson*, No. 3:10-cv-66, 2013 WL 1310555, at *6 (S.D. Miss. Mar. 26, 2013) (noting production of inmate roster without comment); *Est. of Smith v. Shartle*, No. 18-cv-323, 2020 WL 6741539, at *2 (D. Ariz. Nov. 17, 2020) (same, along with staff roster); *Jones v. Cnty. of San Bernardino*, No. 15-cv-80, 2016 WL 4425711, at *3 (C.D. Cal. Aug. 17, 2016) (same). Most public prisons and jails make inmate rosters available to the public via online inmate search features. *See, e.g.*, La. Dept. of Public Safety & Corr. inmate search: https://vinelink.vineapps.com/search/LA/Person. Plaintiffs' request simply is not out of the ordinary.

Finally, LaSalle has never objected that responding to this request would impose any meaningful burden at all.[6] And there will be a protective order in this

---

[6] To the extent LaSalle has databases with ESI responsive to this request, "[c]ase law makes clear that simply searching a database and providing the results therefrom does

12

case to guard the privacy of the other people detained in the Olla facility.  Thus the *cost* of this discovery, in terms of both resources and in privacy, is minimal.

LaSalle should be compelled to produce this evidence.

## CONCLUSION

The Court should compel LaSalle to respond to discovery including by production of documents, as set forth in this motion.  A proposed order is attached to this motion as **Exhibit 8**.

Date: February 10, 2026

Respectfully submitted,

*/s/ Stephen H. Weil*

| | |
|---|---|
| Aaron N. Maples<br>Brendan Connick<br>Maples & Connick<br>733 Dante Street, Suite H<br>New Orleans, LA 70118<br>Tel: 504-269-3870<br>aaron@maplesconnick.com<br>brendan@maplesconnick.com | Stephen H. Weil<br>Sam Harton<br>Romanucci & Blandin, LLC<br>321 N. Clark St. STE 900<br>Chicago, IL 60654<br>Tel: (312) 458-1000<br>Fax: (312) 458-1004<br>sweil@rblaw.net<br>sharton@rblaw.net<br><br>*Attorneys for Plaintiffs* |

---

not require creation of a new document beyond the scope of Rule 34." *Humphrey v. LeBlanc*, No. 20-cv-233, 2021 WL 3560842, at *3 (M.D. La. Aug. 11, 2021).

## CERTIFICATE OF CONFERRAL

      Pursuant to Local Rule 7.4.1, I certify that Counsel for Plaintiff and LaSalle Defendants conferred via videoconference and written Rule 37 correspondence (*see* Exhibits 6 & 7). The parties conferred with for the purpose of amicably resolving the issues described herein but were unable to agree. The parties could not resolve these discovery disputes because Plaintiff and LaSalle Defendants fundamentally disagree on the scope of discovery in this case.  The parties' relevant discovery correspondence setting out their positions is reflected in **Exhibits 6 & 7** to this motion.

                                                */s/ Stephen H. Weil*
                                                Stephen H. Weil

                                                *Counsel for Plaintiffs*