# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| Nefertiti Gilbert, et al., | ) | | |
| | ) | | |
| Plaintiff, | ) | Case No: | 1:25-CV-00421-DDD-JPM |
| | ) | | |
| vs. | ) | Judge: | Dee D. Drell |
| | ) | | |
| Harris County, Texas, et al., | ) | Magistrate: | Joseph H. L. Perex-Montes |
| | ) | | |
| Defendants. | ) | | |

### PLAINTIFFS' FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION TO LASALLE

### Instructions

Wherever appropriate, the singular form of a word should be interpreted in the plural.

If any documents or materials are withheld from production on grounds of privilege or otherwise, please provide all discoverable information that may be useful or necessary for the Court or counsel to analyze the alleged basis for non-production, including (without limitation):

a)  the author(s) of the documents or materials;

b)  the identity of everyone who received copies;

c)  the subject matter of the document or materials;

d)  the date of the document or materials; and

e)  the grounds for withholding the document or materials.

These Interrogatories are deemed continuing until trial. If any information sought by these Interrogatories is learned of or obtained after they have been answered, or if the answers for any reason shall later become incorrect or incomplete, there shall be a continuing duty to the time of trial on the party answering these Interrogatories to formally supplement any answers previously submitted.

In responding to these interrogatories, if you claim that any interrogatory, or a definition or instruction applicable thereto, is ambiguous, do not use such claim as a basis for refusing to respond, but rather set forth as part of the response the language

1

you claim is ambiguous and the interpretation you have used to respond to the individual interrogatory.

If a document or material called for by a request is known to have existed, but cannot now be located, please identify the document or material and state:

a) Whether the missing document or material has been in your possession, custody, or control;

b) When and where the missing document or material was known to be in your possession, custody, or control; and

c) In whose possession, custody, or control such document or material may be found or, as applicable, whether the document has been destroyed or has otherwise ceased to exist.

These requests are continuing and must be supplemented as set forth in the applicable civil rules.

## **Definitions**

1.      The term "documents or materials" means every instrument, writing, photograph, recording or other thing used for the purpose of conveying, retaining, or transmitting information.  The term "documents and materials" shall be construed in its broadest sense and specifically includes, without limitation, kites, medical request forms, other medical forms, screening forms, facility forms, booking forms, inmate forms, inmate to staff communication forms, inventories of evidence, use of force reports, transfer reports, cell assignment reports, jail logs, work schedules, and all forms of computerized documents and records, including the contents of e-mails, disks, thumb drives, hard drives, backups, and other devices. A copy of a document or material that has any notation, comment, or writing—different from another copy of the same document—is a separate document and must be produced. The term "documents

and materials" includes those prepared by you or by any other person that are in your possession, custody, or control. The term "documents and materials" also includes notes; log books; written or recorded statements; interviews; transcripts; inter-office and inter-agency communications; memoranda; reports; records; instructions; specifications; notes; notebooks; diaries; plans; drawings; sketches; diagrams; photographs; photocopies; charts;  descriptions; drafts, whether or not they resulted in a final document; minutes of meetings, conferences, and telephone or other conversations or communications; transcripts of telephone conversations; text messages; emails; notices; recordings of any kind including video recordings; and electronically stored data from which information can be obtained either directly or by translation through detection devices or readers. The term "documents and materials" also includes information stored in, or accessible through, computer or other information retrieval systems (including any computer archives or back-up systems or video retrieval or recording systems), together with instructions and all other materials necessary to use or interpret such data compilations.

2.    The term "you," "your," or "defendants" means the defendants to whom these requests are directed and/or their representatives, agents, and all other persons acting on their behalf or direction.

3.    "LaSalle" refers to the following defendants in this case, individually and collectively:   LaSalle Correctional Center LLC, LaSalle Corrections LLC, LaSalle Management Co LLC.

4.      The term "Subject Confinement," if used, means the confinement of Jaleen Anderson at the Harris County Jail in Houston, Texas from on or about March 2, 2024 to March 22, 2024, as well as his confinement at the LaSalle Correctional Center in Olla, Louisiana ("Olla LCC") from on or about March 22, 2024 to on or about April 3, 2024, as well as his hospital care on April 3, 2024, and is inclusive of his transportation among these locations.

5.      The term "communications" includes communications of any form, written and unwritten, including but not limited to memos, letters, notes, facsimiles, electronic mail, mail, text messages, reports, photographs, audio recordings, and video recordings.

6.      Any other words used in these discovery requests are defined according to standard American use, as shown in a dictionary of the English language.

7.      The term "identify" in reference to a person means to state a person's full name and present or last known address and business address and telephone numbers, together with the partnership, firm, association, corporation or other business, government or legal entity by which that person is employed or with which he or she is affiliated, and his or her position there if known.

8.      The term "LaSalle correctional facility" refers to any jail, prison, or detention facility owned, operated, or managed by LaSalle from January 1, 2015 and the present, including but not limited to the City of Ft. Worth Jail Booking Intake, Fannin County Jail, Irwin County Detention Center, Jackson Parish Correctional Center, Jefferson County Downtown Jail, LaSalle Corrections

Headquarters, Limestone County Detention Center, Parker County Jail, Prairieland Detention Center, Richwood Correctional Center, River Correctional Center, Rolling Plains Detention Center, San Luis Regional Detention Center, Southern Correctional Center, West Texas Detention Center, Willacy State Jail, Winn Correctional Center, the Bi-State Jail, the Olla LCC, and any other facility identified in your response to Interrogatory No. 3.

9.    Unless otherwise stated, the period covered by this discovery is January 1, 2019 to the present.

## **Interrogatories**

**Interrogatory No. 1.**    Identify each document you consulted from which you obtained any information in connection with the preparation of a response in this case to each topic noticed pursuant to Rule 30(b)(6), each Rule 33 interrogatory, and each Rule 36 request to admit.  For each such document, identify the discovery topic to which it relates.

**Interrogatory No. 2.**    Please identify each and every affiliate, subsidiary, parent company, and owner of LaSalle. For each affiliate, subsidiary, parent company, and owner identified, provide a detailed description of nature of the business and ownership, as well as the services provided by or to the affiliate, subsidiary, or parent company, how these services relate to or support the operations of LaSalle correctional facilities.

**Interrogatory No. 3.**    Please identify every correctional facility owned, operated, managed, staffed, or controlled by LaSalle between January 1, 2015 and the present.

For each facility, identify the name, the date on which LaSalle became affiliated with the facility, the prior owner and/or operator of the facility, the subsequent owner and/or operator of the facility (if any), the location of the facility, any other corporation or government entity affiliated with the facility, and the maximum inmate capacity of the facility.

**Interrogatory No. 4.**    Please identify every LaSalle employee or agent (including ground-level employees, supervisors, managers, administrators, and command staff) who you believe had any interaction or contact with Jaleen Anderson during the Subject Confinement, through any form of personal observation, evaluation, or dialogue. Please provide the date, time, and a detailed description of the encounter. If you are unable to state the exact date and time of the encounter, please provide your best estimate.

**Interrogatory No. 5.**    Please identify any LaSalle agents or employees (such as corrections officers, staff, administrators, and medical personnel) who communicated or relayed any information about Mr. Anderson (or his medical condition) at any point during the Subject Confinement. For each person identified, please provide the dates and times that the information was relayed, the person(s) to whom the information was relayed, the form of the communication, a detailed description of the information relayed, and a list of anyone else who was present during the communication. If you are unable to identify the exact date and time of any such communication, please provide your best estimate.

**Interrogatory No. 6.**     Please identify any and all events, individuals and/or entities which you contend were intervening and/or superseding causes of any of the Jaleen Anderson's injuries, including his death. For each event, occurrence, individual, or entity, which you identify, please provide a brief explanation of why it is believed to be an intervening and/or superseding cause and any action taken by LaSalle to mitigate the harm of that intervening and/or superseding cause.

**Interrogatory No. 7.**     Please identify any medical providers who violated (or didn't follow) any LaSalle healthcare-related policies, procedures, protocols, guidelines, directives, standing orders, supervisory memos, operational manuals, or written instructions with respect to Mr. Anderson's confinement or medical care during the Subject Confinement. For each medical provider, please describe what conduct was found to have constituted a violation, when the conduct occurred, what policies, procedures, protocols, guidelines, directives, standing orders, supervisory memos, operational manuals, or written instructions they were found to have violated, which individual, committee, entity, or other body determined the violation, any injury the conduct is believed to have caused, and the related aftermath, including any discipline, corrective action, counseling, warning, instruction, guidance, or other intervention that took place.

**Interrogatory No. 8.**     Please identify any corrections officers or administrative officials who violated (or didn't follow) any LaSalle policies, procedures, protocols, guidelines, directives, standing orders, supervisory memos, operational manuals, or written instructions with respect to Mr. Anderson's confinement or medical care

7

during the Subject Confinement. For each staff member identified, please describe what conduct was found to have constituted a violation, when the conduct occurred, what policies, procedures, protocols, guidelines, directives, standing orders, supervisory memos, operational manuals, or written instructions they were found to have violated, which individual, committee, entity, or other body determined the violation, any injury the conduct is believed to have caused, and the related aftermath, including any discipline, corrective action, counseling, warning, instruction, guidance, or other intervention that took place.

**Interrogatory No. 9.**    Please identify all locations where Mr. Anderson was housed at the Olla LCC during the Subject Confinement, the section of the jail, the pod, the cell number, the identities of any prisoners or detainees with whom he was housed in any pod or cell, and the type of housing in which he was confined (i.e., holding, general population, segregation, medical observation, etc.), and please identify the dates and times that he was housed in each location.

**Interrogatory No. 10.**    Please identify every person who you believe had any responsibility of any kind or nature (whether formal or informal) for investigating or inquiring into any aspect of the facts or circumstances surrounding the conditions of confinement, medical treatment and/or death of Jaleen Anderson.  For each such person, please describe what acts of investigation and inquiry they performed, and please identify all documents that reflect those acts and any communication arising from or related to those acts.

**Interrogatory No. 11.**    Did LaSalle make any changes to any policies, practices, customs, procedures, protocols, standards, operational guidelines, or institute any remedial measures, in response to the confinement, medical care, or death of Mr. Anderson? If your answer is anything other than No, please identify each change and describe it, including the approximate date when each such change was adopted and any documents reflecting the change.

**Interrogatory No. 12.**    Please identify any LaSalle employees or agents (medical or correctional) who were disciplined, reprimanded, warned, or counseled (formally or informally) or subject to any other intervention in connection with Mr. Anderson and/or his medical care during the Subject Confinement. With respect to each person identified, please provide a detailed description of the incident, the date and time that it occurred, and the nature of the discipline, warning, counseling, or intervention

**Interrogatory No. 13.**    Please identify every individual who has died in the custody of a Lasalle correctional facility (or like Mr. Anderson, who died after being transported to or towards a medical facility from the Olla LCC) since January 1, 2015, and, with respect to each person, please state the dates and times of their confinement, as well as any documents that may reflect the cause of death.

**Interrogatory No. 14.**    Please identify every instance in which an ambulance has been summoned to the Olla LCC since January 1, 2019 and for each such event please identify the date and time the ambulance was summoned, the person for whom the ambulance was summoned, the medical condition for which the ambulance was summoned, any correctional staff who accompanied the person to the hospital, and

any records showing the ambulance run, the medical condition at issue, and resolution of the medical issue that prompted the ambulance call.

**Interrogatory No. 15.**   Identify each employee or agent of LaSalle who was responsible for or had final policymaking authority for any policy, procedure, or practice on any of the following subjects relating to the operation of LaSalle correctional facilities:

    a)  Delivery of medical care to detainees;

    b)  Medical services provided at Olla LCC;

    c)  Referral of detainees to off-site medical facilities;

    d)  Treatment of seizures;

    e)  Coordination of care among correctional and medical staff;

    f)  Responses to requests by prisoners for medical attention, evaluation, or treatment;

    g)  Healthcare and correctional staffing levels at the Olla LCC;

    h)  Utilization Management.

**Interrogatory No. 16.**   Describe any effort of the policymakers identified by the preceding interrogatory to review, investigate, analyze, uncover, prevent, or determine the prevalence of any deficiency, shortcoming, or other problem relating to any policy, procedure, or practice on any of the subjects identified in the interrogatory, and identify any documents related to that effort, as well as any changes made by LaSalle as a result of that effort and documents reflecting same.

## **Rule 34 Requests for Production**

### I.  **General**

1.  Any and all documents or materials referred to in your disclosures made pursuant to Federal Rule of Civil Procedure 26(a)(1).

2.  Any and all documents or materials, including communications, that support, relate to, or which were consulted for any of your responses to any party's Interrogatories and Requests to Admit in this case.

3.  Any and all documents or materials that you may use in this case at any deposition, hearing, motion, or at trial. This includes all documents that you may refer to and all documents you will use as exhibits.

4.  Any and all documents or materials obtained from third parties regarding Plaintiffs, Jaleen Anderson, witnesses involved in this litigation, and/or the allegations in Plaintiffs' Complaint (via subpoena or otherwise).

5.  Any and all witness statements relating to any of the allegations in Plaintiff's Complaint.

6.  Any and all documents or materials obtained via subpoena in this case.

7.  Any and all documents or materials relating to any and all criminal convictions of any Person identified by any of the parties under Rule 26 or identified by any party in response to interrogatories.

8.  Any and all audio or visual materials, including documents or materials memorializing the same, depicting or relating to any of the allegations in Plaintiff's Complaint. This request includes but is not limited to photographs,

video recordings, audio recordings, radio recordings, transmissions, and recordings of emergency or non-emergency phone calls.

9. Any and all demonstrative aids or exhibits which may be used at trial. Please note your continuing obligation to supplement this request pursuant to Rule 26(e).

10. Any and all documents or materials relating to any Rule 26 expert witnesses retained by Defendants in this matter, including but not limited to:

   a) All Communications to and from said expert(s);

   b) All Documents provided to and/or relied upon by said expert(s);

   c) All notes, reports, and analyses by said expert(s), including any handwritten markings on any materials provided to the expert(s);

   d) All bills or statements of the hours and compensation paid to or billed by the expert(s) for work on this matter; and

   e) Any transcripts of prior testimony of Rule 26 reports of said expert(s).

Please note your continuing obligation to supplement this request pursuant to Federal Rule of Civil Procedure 26(e).

11. Any and all documents or materials identifying any policymaker who was responsible for or had final policymaking authority for any policy, procedure, or practice on any of the subjects identified in Plaintiff's Interrogatory No. 15, above.

12. Any and all documents or materials containing, constituting, and/or memorializing Communications of any kind between any of the Defendants, or their counsel, agents, representatives, or any Person working on their behalf, and any Person who may have discoverable information or knowledge of the

allegations in Plaintiff's Complaint or Defendants' Answers or Affirmative Defenses to Plaintiff's Complaint, including but not limited to any witness disclosed by any of the parties under Federal Rule of Civil Procedure 26 or in response to interrogatories, relating to Plaintiff and/or the allegations in Plaintiff's Complaint.

## II.  **Jaleen Anderson**

13.  Jaleen Anderson's full and complete inmate file and/or master file.

14.  Jaleen Anderson's full and complete medical records and mental health records.

15.  Any and all documents and materials in your possession, custody, or control that mention, reference, relate to, or concern Jaleen Anderson or his confinement during the Subject Confinement (in any location), including but not limited to voicemails, emails, text messages, memos, notes, logbook entries, written or recorded communication of any kind, video recordings, and/or photographs. This request includes any documents and materials generated after Mr. Anderson's hospitalization and death, such as any investigative materials, mortality or morbidity reviews, quality improvement analyses, or internal examinations into the confinement, hospitalization, and/or death of Mr. Anderson.

16.  Any and all observation logs or guardian entries related to Mr. Anderson during the Subject Confinement.

17.  Any and all observation logs or guardian entries of all inmates generated during the Subject Confinement by anyone who also entered an observation of Mr. Anderson during that time frame.

18.  Any and all incident reports, internal communications, and any documentation concerning Jaleen Anderson's seizures, medical conditions, and interactions with medical staff while in custody.

19.  Any and all video footage from the LaSalle facility showing the conditions surrounding Jaleen Anderson's health and any actions taken by staff, particularly during the time period he exhibited symptoms of medical distress.

20.  Any and all communications, written or electronic, related to Jaleen Anderson's incarceration, welfare, or death between LaSalle staff Harris County or the Harris County Sheriff's Office.

21.  Any and all bills for medical serviced received or issued by LaSalle to Hardner Medical Center in relation to Jaleen Anderson.

22.  Any and all bills for medical serviced received or issued by LaSalle to Harris County or the Harris County Sheriff's Office in relation to Jaleen Anderson.

23.  Any and all documents or materials relating to Jaleen Anderson which were provided to any agent or employee of LaSalle prior to his death. This includes records related to Jaleen Anderson's intake, booking, classifications, medical screening, grievances, incident reports, master files, disciplinary reports, crimes committed while in custody, arrest information, criminal history, medical history and evaluation, mental health history and evaluation, suicide history and evaluation, housing assignments, work assignments, questionnaires, program participation, prior incarcerations, and inmate property.

24.   Any and all documents or materials relating to the intake, booking, processing, and/or classification of Jaleen Anderson at the Olla LCC.

25.   Any and all inmate movement reports, inmate roll calls, prisoner census, count sheets, security check logs, round logs, wellness check logs, or other documents and materials reflecting the inmate population in the 48 hours preceding Jaleen Anderson's death.

26.   Any and all photos or videos of Jaleen Anderson before, during, and after the subject Incident.

27.   Any and all documents and materials reflecting which individuals, including correctional officers and medical staff, who were on duty in the 48 hours preceding Jaleen Anderson's transport to the Hardtner Medical Center.

28.   Any and all documents or materials relating to any LaSalle employees or agents (medical, correctional, or administrative) who were disciplined, reprimanded, warned, or counseled (formally or informally) by LaSalle in connection with Mr. Anderson's confinement between April 5, 2019 and June 11, 2019.

29.   Any and all documents or materials related to any investigation into the cause of Jaleen Anderson's death, including expert opinions, autopsy reports, or any claims that another factor (e.g., pre-existing conditions) contributed to his death.

30.   Any and all documents or materials relating to requests for evaluation and/or treatment made by or on behalf of Jaleen Anderson, and the disposition of any requests (including any responses). This request includes but is not limited to

sick call slips, sick call logs, request forms, "kites," letters, or similar Documents reflecting a request for evaluation and/or treatment for Jaleen Anderson.

31.    Any and all documents or materials relating to any investigation undertaken by any person or entity into Jaleen Anderson, her death, or any of the events described in Plaintiff's Complaint, including any and all attachments, drafts, and any investigator notes.

32.    Any and all documents or materials in your possession sufficient to show all detainees at Olla LCC during the Subject Confinement including the detainee's name, jail number, housing location within the Olla LCC, law enforcement agency on whose behalf the person was held at Olla LCC, home address, and phone number.

33.    Any and all employee and contractor rosters and time sheets for the Olla LCC for the Subject Confinement. For each person identified in documents responsive to this request, produce documents sufficient to show the person's address and telephone number.

34.    Any and all shift reports and roll call documents at the Olla LCC during the subject confinement.

35.    Any and all documents or materials relating to Jaleen Anderson not produced in response to Requests in Subsection II, above, including but not limited to incident reports, cumulative counseling summaries, offender tracking system records, disciplinary cards, inmate records, meeting notes, logs, orders, referrals, statements, reports, personal notes, or personal files of any kind.

36. All grievances, notes, kites, complaints or other communication by detainees relating to Jaleen Anderson (or a person believed to be Jaleen Andrson) regarding his confinement, medical care, illness, or death.

### III.    **Affirmative Defenses**

37. Any and all documents or materials identifying an intervening and/or superseding cause of Mr. Anderson's injuries and/or death.

38. Produce any and all documents or materials which support your contention that Mr. Anderson's injuries and/or death were caused by an intervening or superseding cause.

### IV.    **LaSalle Corrections**

39. Any and all documents or materials reflecting reviews, investigations, inspections, or audits of LaSalle or any of its correctional facilities in the ten years preceding Jaleen Anderson's death, conducted by a third party, including the Department of Justice, the Department of Homeland Security, the National Institute of Corrections, the Louisiana State Department of Public Safety and Corrections, the National Commission on Correctional Health Care, the American, Correctional Association, and the Louisiana State Fire Marshal.

40. Any and all documents or materials relating to administration and assessment of the healthcare services provided at Olla LCC. This request includes but is not limited to all Documents related to:

    a) Complete and unredacted contracts for services, requests for bids and any bids submitted by other healthcare providers;

b) Contract compliance monitoring or audits, all healthcare contract performance summary reports, primary medical service reports, and flash reports;

c) Quality assurance or continuous quality improvement processes, including continuous quality improvement reports for the above-mentioned facilities, governing body continuous quality improvement reports, as well as all studies, audits, presentation, reviews of grievances, notes, and other attachments to such Documents;

d) External and internal audits of healthcare services at any LaSalle correctional facility, including Olla LCC, including audits of treatment protocols, performance-based audit reports;

e) Accreditation evaluations or mock evaluations; and

f) Meetings and minutes of meetings regarding healthcare at any LaSalle facility that was attended by Harris County.

g) Communications relating to parts a–f, above.

## A.    Written Policies

41.    Any and all policies, protocols, guidelines, directives, standing orders, supervisory memos, operational procedures manuals, or written instructions, including but not limited to those relating to healthcare, correctional and healthcare staffing, correctional administration, and corrctions, that governed (or pertained to) the work of medical providers, correctional officers, or administrative officials at the Olla LCC during the timeframe of the Subject Confinement.

42.    Any and all policies, procedures, and directives regarding the review, investigation, tracking, response, reporting, or audit of a critical incident (such as the death of a detainee) in any LaSalle correctional facility.

### B.    Training

43.    Any and all training manuals, handbooks, modules, PowerPoints, lesson plans, tests, exams, videos, or other documents materials provided to LaSalle agents or employees, including medical personnel, describing procedures for the provision of medical services, handling medical emergencies, emergency transport, and response to inmate health concerns.

44.    Any and all documents or materials relating to training given to and/or given by each of the Individual Defendants pertaining to providing prisoners access to medical care, responding to prisoners' requests for medical care, evaluating prisoners' medical Complaints, providing medical treatment to detainees, providing medication to prisoners, and/or referring prisoners for treatment by an outside healthcare provider. This request includes any training manuals, employment manuals, employee handbooks, procedural guides, or similar Documents provided to any of the Individual Defendants.

### C.    Corporate Structure

45.    Organizational chart(s) of LaSalle, including any parent companies, subsidiaries, and affiliated entities involved in the management or operation of the Olla LCC in Olla, Louisiana.

46.    Any and all documents or materials reflecting who owns, operates, manages, and controls City of Ft. Worth Jail Booking Intake, Fannin County Jail, Irwin County Detention Center, Jackson Parish Correctional Center, Jefferson County Downtown Jail, LaSalle Corrections Headquarters, LaSalle Southwest

19

Corrections Headquarters, Limestone County Detention Center, Parker County Jail, Prairieland Detention Center, Richwood Correctional Center, River Correctional Center, Rolling Plains Detention Center, San Luis Regional Detention Center, Southern Correctional Center, West Texas Detention Center, Willacy State Jail, Winn Correctional Center, the Bi-State Jail, and/or any other facility identified in your response to Interrogatory No. 3.

### D.    Staffing

47.    A complete list of all medical and correctional staff positions filled or intended to be filled at Olla LCC.

48.    Any and all documents or materials reflecting any disparities between intended and actual staffing levels at Olla LCC.

49.    Any and all staffing schedules, master staffing plans, personnel rosters, shift schedules, staffing logs, roll calls, staffing sheets and other documents or materials reflecting staff assignments at Olla LCC.

50.    Any and all documents or materials reflecting any internal review or analysis of any staffing plan for Olla LCC.

### E.    Policymakers

51.    Any and all documents or materials, including but not limited to manuals, protocols, procedural guides, rules, policies, practices, guidelines, and training materials, from the period of January 1, 2019 to through the present (including any changes to any of the above-mentioned materials) regarding the following subjects:

a) Delivery of medical care to detainees;

b) Medical services provided at Olla LCC;

c) Referral of detainees to off-site medical facilities;

d) Treatment of seizures;

e) Coordination of care among correctional and medical staff;

f) Responses to requests by prisoners for medical attention, evaluation, or treatment;

g) Healthcare and correctional staffing levels at the Olla LCC;

h) Utilization Management.

52. Any and all documents or materials identifying any policymaker who was responsible for or had final policymaking authority for any policy, procedure, or practice on any of the subjects identified in the preceding Request for Production.

53. Any and all documents or materials relating to any effort of the policymakers identified by the preceding Request for Production to review, investigate, analyze, uncover, prevent, or determine the prevalence of any misconduct, deficiency, shortcoming, or other problem relating to any policy, procedure, or practice on any of the subjects identified in Plaintiff's Request for Production No. 51, above.

**F.    Financials**

54. Any and all annual reports, balance sheets, profit and loss statements, income statements, cash flow statements, balance sheets, ledgers, and other documents reflecting the financial condition and/or net worth of LaSalle Corrections, LLC, and any and all affiliated, subsidiary, or parent companies from January 1, 2014 to the present.

55. Any and all federal and state tax filings, forms, and returns for LaSalle from January 1, 2014 to the present.

56. Any and all accounts receivable and payable for LaSalle, including aging reports, from January 1, 2014 to the present.

57. Any and all financial documents exchanged between LaSalle and Harris County, including but not limited to invoices, purchase requisitions, purchase orders, and receiving reports.

58. Any and all documents and materials reflecting any corporate re-structuring undertaken by LaSalle between January 1, 2014 to the present to address any and all concerns regarding LaSalle's financial health.

59. Any and all documents and materials reflecting and lay-offs, staff reductions, or mass terminations undertaken by LaSalle from January 1, 2019 to the present.

### G.    LaSalle Correctional Center in Olla, Louisiana

60. Any and all documents and materials reflecting the work schedules of all members of the LaSalle correctional staff, administrative officials, and medical staff working at Olla LCC between March 15, 2024 and April 10, 2024, including copies of the work schedules themselves.

61. Any and all policies, procedures, directives, and/or post orders for corrections officers and/or medical at Olla LCC.

62. Any and all booking forms, medical screening forms, and other documents or materials processed when booking an inmate at Olla LCC.

63. Any and all documents pertaining to or reflecting the organizational structure of Olla LCC, including chain of command or other hierarchical structures during the Subject Confinement.

64. Any and all diagrams, floorplans, and other documents or materials reflecting the physical layout of Olla LCC as it existed during the Subject Confinement.

### H.    Provision of Healthcare

65. Any and all documents in which any officials or employees who are connected with any LaSalle client (i.e., a governmental entity contracting with LaSalle, including but not limited to Harris County, the Harris County Sheriff's Office, the State of Texas, and the federal government) expressed any criticisms, questions, or concerns about the provision of healthcare at the Olla LCC and any documents and materials related thereto.

66. Any and all contracts, agreements, or other documents and materials reflecting LaSalle's relationship with Hardner Medical Center or any other medical facility within thirty miles of Olla LCC.

67. Any and all trip sheets, transportation logs, or other documents or materials reflecting the transportation of an inmate from Olla LCC to an external medical facility.

### I.    Insurance

68. Full and unredacted copies of any insurance policies, contracts, or indemnification agreements that could or might provide coverage to any of the Defendants for any of the allegations in Plaintiff's Complaint.

69.     Any and all insurance agreements (primary, umbrella, and excess) under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action against any defendant or to indemnify or reimburse for payments made to satisfy the judgment, as well as any documents affecting coverage (such as denying coverage, extending coverage, or reserving rights) from or on behalf of such person to any of the LaSalle defendants in this case. It is not enough to produce the declarations pages—please produce all responsive documents and be sure to include documents regarding primary, umbrella, and excess insurance.

70.     Copies of any insurance policies in which you are either the beneficiary or have any other ownership interest.

71.     Any and all documents or materials provided by LaSalle to any insurance carrier regarding any death, injury, or other critical incident at any LaSalle correctional facility between January 1, 2019, and April 3, 2024.

## V.    Prior Incidents

### A.    Deaths

72.     Any and all documents or materials relating to deaths of persons incarcerated at any LaSalle correctional facility, including but not limited to medical records, death reviews, mortality and morbidity reports, investigative Documents, incident reports, and Communications. This request includes persons who died at the facilities themselves, as well as persons (like Jaleen Anderson) who

suffered from medical events at the facility and died after being transported out of the facility to an outside medical provider.

73. Any and all documents or materials relating to deaths of persons incarcerated at Olla LCC between January 1, 2014, and the present, including but not limited to medical records, death reviews, mortality and morbidity reports, investigative Documents, incident reports, and Communications. This request includes persons who died at the facilities themselves, as well as persons (like Jaleen Anderson) who suffered from medical events at the facility and died after being transported out of the facility to an outside medical provider.

74. Any and all incident reports, investigative reports, findings, mortality reviews, or other documents and materials related to the death of an inmate at Olla LCC between January 1, 2014, and April 3, 2024.

75. Any and all incident reports, investigative reports, findings, mortality reviews, or other documents and materials related to the death of an inmate at any LaSalle correctional facility.

76. Any and all documents and materials which reflect any disciplinary action implemented and/or recommended as a result of the death of an inmate at Olla LCC between January 1, 2014, and the present.

77. Any and all documents and materials which reflect any disciplinary action implemented or recommended as a result of the death of an inmate at any LaSalle correctional facility between January 1, 2019, and the present.

78.    Any and all logs, reports, summary data, or other documents and materials that track or otherwise record inmate deaths within LaSalle correctional facilities.

79.    Any and all public statements by LaSalle, its agents, or its employees regarding the death of an inmate at Olla LCC between January 1, 2014, and the present, including press releases, press conferences, social media posts, and statements to the news media.

80.    Any and all public statements by LaSalle, its agents, or its employees regarding the death of an inmate at any LaSalle correctional facility, including press releases, press conferences, social media posts, and statements to the news media.

**B.    Emergency Communications**

81.    Documents sufficient to show all emergency dispatches to Olla LLC (such as summoning an ambulance) January 1, 2019, and April 3, 2024, the date of the emergency dispatch, the patient for which the dispatch was made, and the medical outcome of the dispatch.

82.    Any and all logs, reports, summary data, or other documents and materials reflecting communications with an external provider of emergency medical services in relation to a medical emergency at Olla LCC between January 1, 2019, and April 3, 2024.

83.    Any and all logs, reports, summary data, or other documents and materials reflecting internal communications, including radio transmissions, text

messages, emails, and phone calls, in relation to a medical emergency at Olla
LCC between January 1, 2019, and April 3, 2024.

### C. Grievances

84. Any and all grievances submitted by any inmate at Olla LCC alleging a LaSalle
agent or employee's failure to provide medical care between January 1, 2019,
and April 3, 2024.

85. Any and all grievances submitted by any inmate at Olla LCC relating to the
medical care of a seizure between January 1, 2014, and April 3, 2024.

86. Any and all grievances submitted by any inmate at any LaSalle correctional
facility relating to the medical care of a seizure between January 1, 2014, and
April 3, 2024.

87. Any and all grievances submitted by Jaleen Anderson.

88. Any and all responses by LaSalle to any of the grievances produced in response
Requests for Production Nos. 84-87, above.

89. Any and all documents or materials reflecting efforts made by LaSalle, its,
agents, and its employees to address or remedy issues identified in the
grievances produced in response Requests for Production Nos. 84-87, above.

### D. Lawsuits

90. Any and all lawsuits filed against LaSalle, its agents and employees alleging a
failure to provide medical care to inmates at any LaSalle correctional facility.

91. Any and all lawsuits filed against any of the Individual Defendants.

92.    Any and all orders ruling on a Fed. R. Civ. P. 56 Motion for Summary Judgment in any and all the lawsuits produced in response to Requests for Production No. 90-91.

93.    Any and all documents or material reflecting the resolution of any and all the lawsuits produced in response to Requests for Production No. 90-91, including settlement agreements, verdicts, dismissal orders, and dismissal agreements.

### E.    Sentinel event reviews or investigations

94.    Please produce all mortality or morbidity reviews, quality improvement analyses, or internal examinations/investigations into the deaths of any inmates in any LaSalle-run facility from January 1, 2019 to June 30, 2025.

95.    Please produce all in-custody death report forms that LaSalle submitted to any client (such as Harris County) or entity affiliated with a client (such as the Texas Commission on Jail Standards) relating to the deaths of any inmates in any LaSalle-run facility from January 1, 2019 to June 30, 2025.

96.    All documents related to any inspections, audits, or reviews of LaSalle's facilities that were conducted by state, federal, or third-party entities, including compliance with applicable regulations.

97.    Any and all documents or materials reflecting any changes made to LaSalle policies, procedures, or directives as a result of Jaleen Anderson's death.

98.    Any and all documents or materials reflecting criminal charges or prosecution brough against any LaSalle employee or agent, including correctional or medica staff, in the ten years preceding the incident.

99.    Any and all reports, data, or other documents and materials related to the tracking, response, or reporting of critical incidents at Olla LCC.

## VI.    <u>Harris County</u>

100.    Any and all documents and materials in your possession, custody, or control related to any governmental entity's decision to terminate a jail operations contract with LaSalle (including but not limited to Bowie County), including internal communication regarding the decision and any related correspondence with LaSalle regarding the same.

101.    Any and all reports to the Texas Commission on Jail Standards regarding any LaSalle correctional facility.

### A.    Materials provided to Harris County

102.    Any and all documents provided by Harris County or the Harris County Sheriff's Office to LaSalle relating to the housing of Harris County detainees by LaSalle.

103.    Any and all marketing materials provided by LaSalle to Harris County or the Harris County Sheriff's Office relating to the housing of detainees.

104.    Any and all documents and materials regarding Jaleen Anderson that were provided to you by Harris County or the Harris County Sheriff's Office, its agents, or employees.

105.    Any and all documents and materials regarding Jaleen Anderson that were received by you from Harris County or the Harris County Sheriff's Office, its agents, or employees.

### B.     Communications with Harris County

106.    Any and all documents and materials reflecting any communication between LaSalle and Harris County, the Harris County Sheriff's Office, the State of Texas, the State of Louisiana, or any other governmental entity (or any individuals or officials affiliated any government entity) that mentions, relates to, or concerns Mr. Anderson (whether before or after his death).

107.    Any and all documents and materials in your possession, custody, and control reflecting any communication between LaSalle (or anyone affiliated with LaSalle) and Harris County (or anyone affiliated with Harris County) relating to contract performance or dissatisfaction of contract performance expressed by either party to the contract. This request includes any communication related to the termination of the contract or the decision not to renew it.

108.    Any and all documents and materials expressing or communicating any concerns or questions relating to budget overages (whether in whole or specific to any line-item or category of expense) in connection with any agreement to provide services to Harris County for the years 2022 through 2025.

109.    Any and all communications between LaSalle and Harris County or the Harris County Sheriff's Office regarding the provision of medical care at LaSalle correctional facilities, including the Olla LCC.

110.    Any and all minutes, notes, emails, text messages, phone records, calendar invites, or other documents or materials reflecting meetings regarding the provision of medical care to inmates at Olla LCC.

## VII.    __Individual defendants__

111.    The complete personnel file, employee file, and/or contractor file for each of the Individual Defendants, including but not limited to employment applications, resumes, job requirements and qualifications, employment records, employment evaluations, personnel files, performance evaluations, performance appraisal, peer reviews, collegial reviews, training histories, records of training received, disciplinary records, Complaints, and any other documents relating to employment.

112.    All documents or materials relating to the credentials and qualifications, including but not limited to medical credentials, of each of the Individual Defendants. This request includes but is not limited to proof of licensing, certification, and/or registration; all Communications to and from state licensing bodies, certifying, and/or disciplinary bodies; resumes or curriculum vitae; and all training records.

113.    Any and all documents or materials relating to any Individual Defendant's hiring, promotion, demotion, pay raise, pay cut, employee review, duties, disciplinary review, commendation, reprimand, censure, termination, or resignation in the course of his or her employment with ACH or Monroe County, including Communications by Defendants or their agent(s) on those subjects.

114.    Any and all documents or materials relating to any and all arrests, detentions, prosecutions, and criminal history of any Individual Defendant, including but

not limited to arrest reports, offense reports, criminal complaints, certified convictions, or sentencing records.

115. Any and all documents or materials relating to any investigation undertaken by Defendants, the Harris County Sheriff's Office, or third party of Jaleen Anderson, his death, or any of the allegations in Plaintiff's Complaint, including any and all attachments and any investigator notes.

116. Any and all documents or materials relating to any Complaint by any person alleging any kind of misconduct committed by any Individual Defendant within the scope of his or her employment by LaSalle.

117. Any and all documents or materials relating to any Complaint by any person alleging any kind of misconduct committed by any Individual Defendant within the scope of his or her employment by Harris County.

118. Documents that support a claim that any of the Individual Defendants acted inconsistently with any of the policies and practices of LaSalle, Harris County, and/or policies and practices in place at the Olla LCC at any time during any of the events or circumstances described in Plaintiff's Complaint.

## VIII.    Data storage

119. Any and all documents, materials, or data from any internal databases used by LaSalle to track inmate health, medical complaints, emergency responses, and related data.

120. Any and all documents, materials, or data from any internal databases that house information related to inmate classification, medical status, demographic information, and housing.

121. A photo, screen recording, screenshot, or any other visual depiction of each portion of the database containing information specifically related to Jaleen Anderson.

122. Any and all data within the database containing information specifically related to Jaleen Anderson.

123. Any and all policies or procedures related to the storage, management, and destruction of records.

Respectfully Submitted,

/s/ Aaron Maples                    /s/ *Sam Harton*

**Maples & Connick**                **Romanucci and Blandin, LLC**
Aaron Maples                        Stephen Weil (pro hac vice)
Brendan Connick                     Sam Harton (pro hac vice)
733 Dante Street, Suite H           321 N. Clark St.
New Orleans, LA 70118               Chicago, IL 60654
Tel: 504-269-3870                   Tel: (312) 458-1000
aaron@maplesconnick.com             Fax: (312) 458-1004
brendan@maplesconnick.com           sweil@rblaw.net
                                    sharton@rblaw.net

                                    *Attorneys for Plaintiffs*