# EXHIBIT 6



<u>**Via Email**</u>

Deirdre C. McGlinchey
Ryan Lavelle
Jones Walker LLP
dmcglinchey@joneswalker.com
rlavelle@joneswalker.com

**Re:**       ***Gilbert et al, v. LaSalle Corrections LLC, et al*, 1:25-cv-421**
       **Written Discovery Deficiencies**

**Date:**       **December 30. 2025**

Dear Deirdre:

I am writing regarding your December 10, 2025, responses to Plaintiff's Rule 33 & 34 discovery directed to the three LaSalle corporate defendants whom we have sued and who you represent in this case (LaSalle Correctional Center LLC, LaSalle Corrections LLC, and LaSalle Management Company LLC). Your responses are incomplete and contain multiple deficiencies that effectively block our ability to pursue the *Monell* claims we have pled in this case.

We request a call with you in the coming week to discuss these problems. We are available to speak with you on January 2, 5, and 6.

**I.       Threshold issues that apply to all discovery**

**A. Waiver of objections due to untimely responses**

Your discovery responses were submitted past deadline. While we agreed to one 30-day extension and then acquiesced to a second that you demanded last-minute, you failed to provide responses within either deadline. Indeed, you still have failed to provide responses for LaSalle Management Company LLC. As such, your objections to the discovery are considered waived. "[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived." *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989).

**B. The Scope of discovery includes cross-facility information**

You have indicated that you are taking the position that only the Olla facility is subject to discovery, and that you are flatly refusing to discuss discovery related to other LaSalle facilities. That position is untenable.

Our complaint explicitly pleads a *Monell* theory against LaSalle based on its customs and practices across multiple LaSalle facilities, which includes incidents at

1



those various facilities. *See* Complaint ¶¶ 126-139. Your clients could have sought to have the Court dismiss that theory at the Rule 12 stage, but they did not. These claims remain in our case, and the rules provide that we must be allowed to take otherwise proportional discovery to prove those claims, since "the allegations in a plaintiff's complaint inform the scope of discovery—not the other way around." *Pulido v. Allstate Vehicle & Prop. Ins. Co.*, No. 1:23-CV-309, 2024 WL 1468922, at *2 (E.D. Tex. Apr. 3, 2024) (citing Fed. R. Civ. P. 26(b)).

Moreover, courts have repeatedly held that the broad practices of private prison vendors *are* probative of the vendor's widespread practices under *Monell*. *See, e.g.*, *Shadrick v. Hopkins County*, 805 F.3d 724, 744 (6th Cir. 2015) (noting with respect to a *Monell* plaintiff's "argument that a pattern of tortious or unconstitutional conduct . . . existed, evidence about similar incidents of inmate deaths in jail facilities served by [private vendor] may be relevant to whether [the vendor] acted with deliberate indifference to the medical needs of inmates with whom its nurses came into contact at [the jail where plaintiff's decedent was housed].");  *Herr v. Armor Corr. Health Servs., Inc.*, No. 6:19-cv-394, 2019 WL 12021672, at *5 (M.D. Fla. Sept. 9, 2019) (same); *Shields v. Prince George's County*, No. 15-cv-1736, 2016 WL 4581327 (D. Md. Sept. 1, 2016) (same).  In this case, moreover, LaSalle operates all the facilities in question.  If anything, LaSalle's operations resemble those of a conventional, single jurisdiction.

LaSalle Management Company LLC, which d/b/a LaSalle Corrections, operates multiple LaSalle facilities and would possess much of the *Monell* discovery we seek. As I indicated in my previous emails, I am treating our discovery and this enforcement letter as covering those larger operations and thus directed at LaSalle Management Company LLC, not just operations at the Olla facility. We expect you to come prepared to discuss discovery in that scope. **If you do not plan to do so, let me know immediately.**

### C. Boilerplate "General Objections" are waived

At the outset of your responses you make boilerplate "general objections" of undue burden, overbreadth, etc. and purport to incorporate them into each of your responses. None of these objections, however, is directed to any particular request or any aspect of a request. Boilerplate objections like this are tantamount to making no objection at all, and they are considered waived. *See Jimmy D. Enters. LLC v. Janus Hotel Mgmt. Servs. LLC*, No. 2:21-CV-04208, 2023 WL 6665764, at *5 (W.D. La. Oct. 12, 2023).

For example, you repeatedly make this or a closely similar boilerplate objection to dozens of discovery requests:

> LaSalle Correctional Center objects to this request as neither relevant nor proportional to the needs of the case.



> If Plaintiffs appropriately narrow this request, LaSalle
> Correctional Center will endeavor to respond further.

This objection violates the federal rules for multiple reasons:

**The objections are rank boilerplate**, offering no hint of *why* you believe the particular discovery request is not relevant or proportional. You invite Plaintiffs to "appropriately narrow" the request, but with no explanation from you about what you found objectionable, we have no idea what narrowing you believe is appropriate. That effectively leaves us at square one---as if you had never responded to the discovery at all.

**The response is a facial violation of Rule 34(b)(2)(B).** Your assertion that you would respond to a "appropriately narrow[ed]" version of the request concedes that you do not find a narrowed version objectionable. But Rule 34(b)(2)(B) obligates you to respond to requests to the extent you believe they are "appropriate." The 2015 Advisory Committee Notes explain, for example, that "[a]n objection may state that a request is overbroad, but if the objection recognizes that some part of the request is appropriate the objection should state the scope that is not overbroad." Your responses fail to do this at all, and thereby violate your obligations under the rules. You have failed to produce *anything* in response to dozens of requests that you tacitly acknowledge are appropriate in part, your responses are effectively non-responsive. Under the rules, that too amounts to a waiver of your objections.

## II.    As a result of your deficient discovery responses, you have failed to respond to Monell discovery.

The upshot of the foregoing and your general approach to our discovery (as outlined below) is that, despite seeking multiple extensions and taking months to respond to our discovery, you have responded to very little. Roughly speaking, you have produced:

1. Documents relating to Mr. Anderson's incarceration, medical care, and death;

2. A limited number of unilaterally selected written policies; and

3. The personnel files of the individual defendants.

Besides invoking a contract entered into between LaSalle and Harris County after Mr. Andrson's death, you have effectively refused to respond to any of the *Monell* discovery we propounded. And you have refused to explain what was wrong with our discovery and instead told us effectively to re-write our discovery requests, in violation of Rule 34(b)(2)(B).

This approach is unacceptable. Our complaint pleads detailed *Monell* claims based on LaSalle's policies, practices, and customs across its facilities that allegedly resulted in Mr. Anderson's death, and we have pleaded with specificity that the practices driving Mr. Anderson's death were in place across multiple LaSalle

3



facilities. *See* Complaint ¶¶ 126-147.  You have sought multiple extensions that have consumed months of time yet you have responded to our discovery on this score with boilerplate objections and little else.

### III.    Organization for Rule 37 conference.

Our next Rule 37 conference should be organized to focus on the following categories of *Monell* discovery, directed at LaSalle Corrections, LLC, LaSalle Correctional Center LLC, and LaSalle Management Company LLC. **We expect you to come prepared to tell us, pursuant to Rule 34(b)(2)(B), what information and documents you *are* willing to search for and gather in response to our requests, as well as a sufficiently specific basis for any remaining objections and withheld documents.**

### Category 1: Corporate structure and operations

To prove *Monell* liability, we must identify who had final policymaking authority and how LaSalle's corporate structure operated across facilities. We must understand which entity is responsible for what functions and which individuals made policy decisions.

**Requests at issue:**

- **Interrogatories 2, 3**: Identity and operations of LaSalle entities and facilities.
- **RFPs 45, 46**: Organizational charts and ownership/operation of facilities.

**Your Deficient Responses:**

- **Int. 2**: You merely refer to the Louisiana Secretary of State's website without producing documents or clarifying LaSalle Correctional Center LLC's relationship to other facilities.  And you fail to provide any information for LaSalle Management Company LLC.
- **Int. 3**: You refuse to provide information about other facilities, claiming it is "neither relevant nor proportional."
- **RFP 45**: You claim you have no organizational chart.
- **RFP 46**: You refuse to provide documents showing who owns/operates facilities, claiming not proportional.

**What we need:**

1. Clear explanation of the corporate structure: Which entity does what? Who owns what? This would include any documents sufficient to explain the corporate structure.

4



## Category 2: Policymakers – identification and actions

Under *Monell*, we must prove that LaSalle policymakers were on notice of and were indifferent to widespread patterns. This discovery seeks to understand what LaSalle policymakers did (or failed to do) to identify problems with the delivery of medical care and what if anything they did to fix problems that were identified.

### Requests at issue:

- **Interrogatories 15, 16**: Identity of policymakers and their efforts to review/investigate problems.
- **RFPs 11, 52, 53**: Documents identifying policymakers and their review efforts and attempts to address identified problems.

### Your Deficient Responses:

- **Int. 15**: You object that we're asking for a "legal definition" of policymaker and simply refer us to "all the documents produced."
- **Int. 16**: Same objection.
- **RFPs 52, 53**: You object these seek a "legal conclusion" and refer to documents produced.

**Your objections are improper:** Interrogatories may permissibly contain mixed questions of law and fact. More importantly, our interrogatories ask for policymakers who were "responsible for **or** had final policymaking authority." That is a straightforward factual question. Surely your client knows who within LaSalle was in charge of or responsible for the policy areas listed in Interrogatory 15.

### What we need:

For each subject area listed above, please do the following:

- Identity of the person(s) responsible for each policy area.
- Documents showing what actions they took to review, investigate, analyze, uncover, prevent, or determine problems in that area.
- Documents showing any changes made as a result of those efforts.

## Category 3: Deaths at LaSalle facilities

Our complaint alleges that LaSalle has a pattern of failing to provide adequate medical care that has resulted in multiple deaths. Complaint ¶ 139. We detail at least 12 specific incidents. This is core *Monell* evidence showing widespread custom and LaSalle's deliberate indifference.



**Requests at issue:**

- **Interrogatory 13**: Identity of persons who have died in LaSalle custody since January 1, 2015.
- **RFPs 72-78**: Documents relating to deaths at LaSalle facilities and at Olla.
- **RFP 94**: Mortality/morbidity reviews.
- **RFP 95**: Death reports submitted to clients.

**Your deficient responses:**

- **Int. 13**: You refuse to respond, claiming "neither relevant nor proportional" and asking us to "narrow."
- **RFPs 72-77**: You object with boilerplate and produce only Anderson-related documents.
- **RFP 78**: You refuse, claiming "neither relevant nor proportional."
- **RFP 94**: You produce responsive documents regarding Mr. Anderson and otherwise refuse to respond.
- **RFP 95**: You refuse, claiming "neither relevant nor proportional."

**Your objections are improper:** Deaths of persons in custody are directly relevant in a *Monell* case alleging a person died in custody due to widespread unconstitutional practices by a party. The relevance is obvious. You make no effort to explain what is disproportionate about these requests. You have not stated that gathering these records would be burdensome.

**What we need:**

1. For each death since January 1, 2015: name, date, facility, cause of death.
2. All mortality/morbidity reviews, investigations, incident reports.
3. All death reports submitted to clients or regulators.
4. Any disciplinary action resulting from deaths.

**At the conference**: Be prepared to discuss how death information is recorded/stored. This may allow us to reasonably narrow our requests.

## Category 4: Critical incident tracking and reporting

These records are an efficient means of identifying serious medical events and outcomes.

**Requests at issue:**

- **RFP 71**: Documents provided to insurers regarding deaths, injuries, critical incidents.

6



- **RFPs 79, 80**: Public statements about deaths.
- **RFP 99**: Reports/data tracking/reporting critical incidents.
- **Interrogatory 14** and **RFPs 66, 67, 81-83**: Emergency medical transport and dispatch records.

**Your deficient responses:**

- **RFP 71**: You claim "neither relevant nor proportional."
- **RFPs 79, 80**: You claim documents are "equally available" to us.
- **RFP 99**: You refer to "existing production" without identifying specific documents.
- **RFPs 81-83**: You refuse with boilerplate objections.

**Your objections are improper:**

- Transmissions to insurers about critical incidents are an efficient way to identify catastrophic medical events.
- Public statements are *not* equally available - we have no way to know we've found them all; you have ready knowledge of your own statements.
- Emergency dispatch records are relevant to understanding delays in medical care and identifying relevant events.

**What we need:**

1. All communications with insurers about deaths, serious injuries, or critical incidents
2. Logs or databases tracking critical incidents
3. All emergency dispatch records (calls for ambulances, etc.) since January 1, 2019

## Category 5: Grievances about medical care

Grievances are direct evidence of problems with medical care and of LaSalle's knowledge and response (or lack thereof).

**Requests at issue:**

- **RFPs 84-86, 88-89, 116**: Grievances alleging inadequate medical care and LaSalle's responses

**Your deficient responses:**

You refuse with boilerplate "neither relevant nor proportional" and ask us to narrow our requests but provide no guidance on how to narrow them or what the more proportional scope would be.



**What we need:**

1. All grievances alleging failure to provide medical care (LaSalle-wide and Olla-specific)
2. All grievances relating to medical care of seizures
3. LaSalle's responses to these grievances
4. Documents showing efforts to address issues raised in grievances

**At the conference**, please be prepared to discuss how LaSalle tracks and records grievances. Computerized tracking will likely make searching for relevant grievances efficient.

### Category 6: Reviews, audits, and inspections

External reviews may show what problems exist with delivery of medical care, as well as notice by LaSalle and whether it took corrective action.

**Requests at issue:**

- **RFPs 39, 40**: Reviews/assessments of medical care provision.
- **RFP 96**: Inspections, audits, reviews by state/federal/third-party entities.
- **RFP 101**: TCJS reports.

**Your deficient responses:**

You refuse all with boilerplate objections.

**What we need:**

1. All external reviews, inspections, audits (DOJ, DHS, state agencies, accreditation bodies).
2. All internal quality assurance/continuous quality improvement documents.
3. Contract compliance monitoring or audits.
4. With narrowing: focus on documents concerning medical care delivery.

### Category 7: Policies

To prove that unconstitutional customs existed, we need to see the written policies and training materials - or the absence thereof.

**Requests at issue:**

- **RFPs 41, 42, 51, 61**: Written policies regarding healthcare, administration, staffing, critical incidents
- **RFPs 43, 44**: Training materials



**Your deficient responses:**

- **RFPs 41, 51, 61**: You produced 59 pages of unilaterally selected policy excerpts
- **RFP 42**: You refuse with boilerplate objections

Policy manuals are holistic documents that must be read together. The relevance of certain policies is not apparent until they are read in conjunction with other policies.

**What we need:**

1. Complete policy manuals (healthcare, operations, administration) as they existed during relevant time periods.
2. Policies regarding critical incident review.
3. All training materials provided to staff regarding medical care, emergencies, when to call 911, etc.

## Category 8: Staffing levels

Our complaint alleges that LaSalle understaffs its facilities to cut costs, which contributes to inadequate medical care. (Complaint ¶¶ 142, 147).

Requests at issue:

- **RFPs 47-50, 59, 60**: Staffing positions, vacancies, schedules, analyses, changes.

**Your deficient responses:**

You refuse all with boilerplate "neither relevant nor proportional."

**What we need:**

1. Intended vs. actual staffing levels (medical and correctional).
2. Documents showing staffing shortages or vacancies.
3. Internal analyses of staffing adequacy.
4. For Mr. Anderson's time period: work schedules showing who was on duty.

## Category 9: Financial information

Our complaint alleges that LaSalle's unconstitutional practices are driven by a profit motive - cutting costs on staffing and medical care. (Complaint ¶¶ 140-147). Financial information is relevant to punitive damages and to understanding LaSalle's motives.



**Requests at issue:**

- **RFPs 54-58**: Financial documents, tax returns, accounts, contracts with Harris County.

**Your deficient responses:**

You refuse all, claiming "neither relevant nor proportional" but offering no explanation of disproportionality.

**What we need:**

We're willing to narrow this with appropriate confidentiality protections, but we need at least:

1. Documents showing LaSalle's bidding / RFP practices.
2. Contracts with Harris County.
3. Financial statements showing profitability.
4. Documents showing budget allocations for medical care and staffing.

## Category 10: Client communications

Communications with clients like Harris County show what LaSalle told them and what concerns were raised.

**Requests at issue:**

- **RFPs 100, 102, 103, 109**: Communications with clients about medical care, terminations, performance.

**Your deficient responses:**

- You point only to the post-event contract with Harris County.
- You claim "neither relevant nor proportional."

**What we need:**

1. All communications with Harris County about medical care provision.
2. Documents regarding any contract terminations (e.g., Bowie County).
3. Communications about performance issues or concerns.
4. Documents showing what LaSalle told Harris County about how it would provide care.



## Category 11: Affirmative defenses

### Requests at issue:

- **Interrogatory 6** and **RFPs 37, 38**: Documents identifying superseding causes.

### Your Deficient Response:

You say you will disclose this with expert reports, after fact discovery closes. This is too late: Your expert reports are due before the close of fact discovery and after our experts disclose. If you disclose that late, we will have no way to conduct our own discovery to investigate the facts underlying your affirmative defenses. While we have pleaded detailed factual allegations, you have not made detailed factual allegations supporting your affirmative defenses.

**What we need:** Disclosure of any factual basis for superseding cause defenses during fact discovery, with sufficient time for investigating discovery.

## Category 12: Witness information

These documents and information are important for understanding the context of events surrounding Mr. Anderson's medical care, and identification of eyewitnesses. The documents sought in these requests are relevant because we need to identify potential witnesses and understand the context of events.

### Requests at issue:

- **RFPs 32-34, 36, 60, 63, 64**: Detainees present, employee rosters, shift reports, communications about Anderson, work schedules, chain of command, floorplans

### Your Deficient Responses:

You refuse most with boilerplate "neither relevant nor proportional."

### What we need:

1. List of detainees at Olla during Anderson's confinement (for potential witnesses)
2. Employee rosters and work schedules
3. Shift reports (basic correctional documents)
4. Floorplans (even just fire escape plans for context)
5. Chain of command documents

11



## IV.    Specific deficiencies requiring immediate attention

### A. LaSalle Management Company LLC

You have failed entirely to respond on behalf of LaSalle Management Company LLC. This entity appears to operate multiple LaSalle facilities. All discovery in this letter is directed at LaSalle Management Company LLC as well as the other LaSalle entities. You must provide written responses on behalf of that entity.

### B. RFPs 68-70 - Insurance policies

You identify only one policy. But we made this request of each of the three LaSalle defendants. Produce insurance documents for all entities, including umbrella and excess coverage, or confirm in writing that no additional responsive documents exist.

## V.    Rule 37 conference and next steps

At our Rule 37 conference, we expect you to come prepared to

1. **Acknowledge that cross-facility discovery is within scope** or be prepared to explain why our pled *Monell* claims should be dismissed

2. **For each category above, tell us what you are willing to produce** - e.g., "We'll produce death information for the last 5 years at Olla" or "We'll produce policies in effect during 2023-2024." To the extent there is any limitation on the scope of your proposed production as compared to the scope of records we have requested, be prepared to explain the basis for such limitation.

3. **Identify any legitimate burden concerns** with specificity so we can discuss reasonable limitations

4. **Provide a production schedule** for categories where you agree to produce the documents responsive to our requests.

If you are unable to make substantive offers at the conference, we will have no choice but to file a motion to compel. Given the wholesale nature of your refusal to provide *Monell* discovery, such a motion would likely be extensive and seek sanctions for your failure to comply with your discovery obligations.

Please confirm your availability for a call on January 2, 5, or 6.



Best regards,

/s/ Stephen H. Weil
Romanucci and Blandin, LLC
Antonio Romanucci
Stephen Weil
Sam Harton
321 N. Clark St.
Chicago, IL 60654
Tel: (312) 458-1000
Fax: (312) 458-1004
aromanucci@rblaw.net
sweil@rblaw.net

sharton@rblaw.net

Aaron Maples
Brendan Connick
Maples & Connick
733 Dante Street, Suite H
New Orleans, LA 70118
Tel: 504-269-3870
aaron@maplesconnick.com
brendan@maplesconnick.com